UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DAVID M. HUNT

        Plaintiff,

                                          Case Number 08-14307-BC

v.                                        Honorable Thomas L. Ludington

MACY'S RETAIL HOLDINGS, INC.,

        Defendants.

_____/

## ORDER GRANTING MOTION TO COMPEL ARBITRATION AND DISMISS THE ACTION, CANCELING HEARING, AND DISMISSING THE CLAIMS WITHOUT PREJUDICE

On October 9, 2008, Plaintiff David M. Hunt filed a complaint, alleging that his former employer, Defendant Macy's Retail Holdings, Inc., discriminated against him based on gender and retaliated against him in violation of the Michigan Elliot-Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws § 37.2101, et seq. Plaintiff has invoked the Court's diversity jurisdiction under 28 U.S.C. § 1332. On December 2, 2008, Defendant filed a motion "to stay the action while motion is pending, compel arbitration and dismiss the action, or in the alternative, stay the action pending arbitration" [Dkt. # 7]. Plaintiff filed a response on December 5, 2008, and Defendant filed a reply on December 16, 2008.

Defendant's motion contends that Plaintiff agreed to arbitrate his employment disputes with Defendant. In response, Plaintiff contends that he has revoked the agreement under Michigan law. The Court has reviewed the parties' submissions and finds that the facts and the law have been sufficiently set forth in the motion papers. The Court concludes that oral argument will not aid in the disposition of the motion. Accordingly, it is **ORDERED** that the motion be decided on the

papers submitted.  *Compare* E.D. Mich. LR 7.1(e)(2).

I

Defendant provided the following facts in its motion; Plaintiff did not dispute them in his response:

In Fall 2003, Defendant's parent company, Macy's, Inc., implemented a dispute resolution program entitled "Solutions InStore" ("SIS") nationwide.  SIS involves four steps.  Steps one through three cover all employees and involve internal processes for informally resolving disputes.  Step four is arbitration and applies only if the employee agreed to be bound by arbitration; it is not a condition of the employee's continued employment.

The arbitration plan covers all employment-related disputes and provides for arbitration administered by the American Arbitration Association.  It provides further that "[i]f a party files a lawsuit in court to resolve claims subject to arbitration, both agree that the court shall dismiss the lawsuit and require the claim to be resolved through the [SIS] program."

In October 2000, Plaintiff was hired by May Department Stores Co. ("May"), and in May 2005, May merged with Macy's.  At that point, Plaintiff became an employee of Macy's.  In 2006, Macy's implemented a roll-out of SIS to all former May employees, including Plaintiff.  Each division of Macy's was directed to set up informational sessions with their employees and all employees were directed to attend one such meeting.  Plaintiff signed an attendance sheet at one of the meetings, indicating "10/6" as the date.

At these meetings, employees were given the "Early Dispute Resolution" brochure, which summarized the terms of SIS.  A company representative explained SIS to employees, answered questions, and alerted employees to the future mailings that they would be receiving.  The

employees viewed a short video explaining the program. Additionally, each store placed posters explaining the four-step SIS process in areas frequented by employees.

On September 26, 2006, a "Welcome to Solutions InStore" postcard, the plan document for SIS, an "Early Dispute Resolution Program Election Form," and a pre-addressed, postage-paid return envelope, were mailed to all former May employees at their address of record maintained in the company files. The election form instructed that if an employee wanted to be excluded from step four, the arbitration phase of SIS, the employee should fill out and return the election form in the pre-addressed, postage-paid envelope with a postmarked date no later than October 31, 2006. If an employee returned an election form, Macy's sent that employee a confirmation of the election, which the election form indicated that Macy's would do. The election form instructed the employee to contact SIS if he or she did not receive confirmation.

Plaintiff was mailed the materials described above, but he did not return the election form. Thus, he did not receive a letter confirming that he had opted out of step four of SIS. If the employee did not return the election form, on April 18, 2007, Macy's sent the employee a brochure entitled, "You're in Good Company," confirming the employee's participation in the program. Plaintiff was sent a copy of this brochure.

In October 2007, Macy's gave employees a second chance to opt-out of the fourth step of SIS. Macy's mailed the following items to employees who had not previously opted out: (1) a "We've Got You Covered" brochure, (2) an "Opening the Door to More Information" newsletter, (3) an election form with a postmark deadline of November 15, 2007, and (4) a pre-addressed, postage-paid return envelope. Plaintiff was mailed this package of documents.

As before, the election form indicated that an employee who opted-out would receive a

confirmation letter, and that if the employee did not receive the confirmation, he or she should contact the SIS office. The SIS office logged any communications, including telephone calls, letters, and email, concerning the rollout into a spreadsheet.

The SIS office has regular procedures for processing election forms. Each election form is date-stamped when it is opened. The form is reviewed for completeness and then loaded into the "PeopleSoft Human Resource System," which records opt-out status. Hard copies of election forms are maintained in filing cabinets organized by social security number. According to the PeopleSoft system, Plaintiff did not return an opt-out form. The hard-copy files do not contain an election form for Plaintiff either. No mail sent to Plaintiff was ever returned to the SIS office as undeliverable, and Plaintiff never contacted the SIS office.

II

Defendant's motion to compel arbitration asserts the following main points: (1) Plaintiff and Defendant entered into an arbitration agreement, (2) the arbitration agreement is valid, (3) Plaintiff's claims under the ELCRA are within the ambit of the arbitration agreement, (4) the arbitration of claims is not prohibited under the ELCRA (5) the procedures set forth within the arbitration agreement are fair, and (6) public policy favors enforcement of arbitration agreements.

Plaintiff's sole argument in his response is that he has revoked the arbitration agreement. Accordingly, the Court will only address whether the agreement is revocable and not the remainder of Defendant's arguments. Plaintiff contends that, under Michigan law, the arbitration agreement is one for common-law arbitration, rather than statutory arbitration, because the agreement does not provide for an entry of judgment in circuit court subsequent to an award. As such, Plaintiff asserts that the agreement may be unilaterally revoked by either party prior to the announcement of an

award.

Plaintiff relies primarily on *Trompeter v. Catholic Family Services*, No. 221658, 2001 WL 1134876 (Mich. Ct. App. Sept. 25, 2001) to support his argument. In *Trompeter*, the court of appeals recognized that, in Michigan, common-law arbitration agreements are "revocable by either party at any time before the announcement of an award." *Id.* at *1. In contrast, "statutory arbitration agreements are irrevocable except by mutual consent." *Id.* (internal quotation omitted). The court further recognized that, when parties intend to invoke statutory arbitration under the Michigan Arbitration Act ("MAA"), Mich. Comp. Laws § 600.5001 et seq., the arbitration agreement must "clearly evidence that intent by a contract provision for entry of judgment upon the award by the circuit court." *Id.* (quoting *Hetrick v. David A. Friedman, D.P.M., P.C.*, 602 N.W.2d 603, 606 (Mich. Ct. App. 1999)). Thus, if an arbitration agreement does not provide that "judgment shall be entered in accordance with the arbitrators' decision, the contract involves common-law arbitration rather than statutory arbitration." *Id.* at *2 (internal quotation omitted).

Plaintiff argues that under *Trompeter* and Michigan law generally, the arbitration agreement in this case is for common-law arbitration because it does not state that judgment shall be entered in circuit court in accordance with the arbitrator's award. However, the flaw in Plaintiff's argument is that the arbitration agreement is not governed by Michigan law.[1] The agreement is governed by federal law, specifically the Federal Arbitration Act, 9 U.S.C. § 1, et seq. Article 18 of the arbitration agreement explicitly states:

> The arbitration agreement, the arbitration proceedings, and any award rendered pursuant to them shall be interpreted under, enforceable in accordance with, and

---

[1] While the existence of an agreement to arbitrate is determined by state law, *First Options Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995), Plaintiff does not dispute the existence of an agreement.

>   subject to the Federal Arbitration Act, 9 U.S.C. § 1, et seq., regardless of the state in
>   which the arbitration is held or the substantive law applied in the arbitration.

Moreover, 9 U.S.C. § 9, which is incorporated into the agreement, provides for the entry of judgment in a court. *See Rooyakker & Sitz, P.L.L.C. v. Plante & Moran, P.L.L.C.*, 742 N.W.2d 409, 416-17 (Mich. Ct. App. 2007) (finding that the phrase "judgment may be entered . . . in any court having jurisdiction" was sufficient to satisfy the requirements of the Michigan Arbitration Act); *Int'l Millenium Consultants, Inc. v. Taycom Business Solutions, Inc.*, No. 08-11303, 2008 WL 5235994, at * 3-4 (E.D. Mich. Dec. 15, 2008) (finding a statutory arbitration agreement existed when the agreement incorporated by reference the American Arbitration Association rules, one of which states that the parties consent to the entry of judgment "in any federal or state court having jurisdiction"). Thus, in this case, the arbitration agreement is not a common-law arbitration agreement unilaterally revocable by Plaintiff. As Plaintiff has argued no other grounds on which the agreement should not be enforced, the Court will grant Defendant's motion to compel arbitration and dismiss Plaintiff's ELCRA claims.

### III

On February 6, 2009, Plaintiff filed an amended complaint, seeking to add claims against Defendant under 42 U.S.C. § 1981. These claims were not properly before the Court in considering Defendant's motion to compel arbitration, thus, these claims are not affected by this order.

### IV

Accordingly, it is **ORDERED** that Defendant's motion to compel arbitration and dismiss complaint [Dkt. #7] is **GRANTED** with respect to Plaintiff's ELCRA claims.

It is further **ORDERED** that the hearing scheduling for February 11, 2009, is **CANCELED**.

It is further **ORDERED** that Plaintiff's ELCRA claims are **DISMISSED WITHOUT PREJUDICE**.

                                          s/Thomas L. Ludington
                                          THOMAS L. LUDINGTON
                                          United States District Judge

Dated: February 10, 2009

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on February 10, 2009.

                                  s/Tracy A. Jacobs
                                  TRACY A. JACOBS